(No. 12499.—Judgment affirmed.)

THE PEOPLE *ex rel.* William Elbers *et al.* Defendants in Error, *vs.* FRED MARQUARDT *et al.* Plaintiffs in Error.

*Opinion filed February 20, 1919.*

1. DRAINAGE—*commissioners cannot incur indebtedness prior to levying an assessment—estoppel.* Drainage commissioners have no authority to expend money or incur indebtedness prior to the levy of an assessment, and, in an action of *quo warranto* by the owners of lands alleged to have been unlawfully annexed to the district, a plea of estoppel by the commissioners on the ground that because of the silence and delay of the relators in bringing their action the commissioners have spent considerable money for repairs in the district in anticipation of the taxes from the annexed lands is subject to demurrer, there being no averment that the lands of the relators have ever been assessed.

2. SAME—*what does not authorize the commissioners to annex lands to district.* Where land owners before the organization of a drainage district have drained their land by tile which has an out-

let on land which is taken into the district when it is organized, the act of the owner of the land in the district in connecting this outlet with the district ditch does not give the commissioners authority to annex the lands outside the district.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

ALBERT H. KRUSEMARK, for plaintiffs in error.

RATHJE, LAWLOR & CONNOR, (EDWIN D. LAWLOR, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county in favor of defendants in error in a *quo warranto* proceeding brought by them against plaintiffs in error, drainage commissioners of district No. 2 of the town of Rich, Cook county, Illinois. The drainage district was organized under the Farm Drainage act in 1905. In March, 1912, the commissioners passed a resolution and made an order annexing to the district certain lands not included in it when it was organized, which lands belonged to the relators in the *quo warranto* suit. The lands were annexed to the district by the commissioners because they determined that the owners had by their voluntary action connected the drains and ditches on their lands with the ditch of the drainage district, which was disputed by the relators, and the *quo warranto* proceeding was brought for the purpose of testing the legality of the annexation. The plaintiffs in error filed a plea of estoppel by reason of *laches,* and also filed a plea of justification, setting up the organization of the district, their title to the office of commissioners, and the annexation of relators' lands because the owners had voluntarily connected their drainage with the drains of the district. A demurrer was sustained to the plea of estoppel and *laches* and a trial had by jury under

the plea of justification. The court at the conclusion of the evidence directed a verdict of guilty in favor of relator Elbers and no error is assigned on that ruling. The jury found against the plaintiffs in error as to the lands of relator Meinheit, and the court rendered a judgment of ouster against them as to the lands of both relators.

There was no error in the ruling of the court sustaining a demurrer to the plea of estoppel. The plea alleged, in substance, that the district was organized in 1905; that in March, 1912, the commissioners adopted a resolution and order annexing relators' lands on the ground that they had voluntarily connected their ditches with the ditches of the district, and said lands were classified according to supposed benefits. A meeting was called and notice given of a time and place to hear objections to the classification. There is no averment that Henry Elbers, the owner of part of the land, was present at that meeting, but the plea avers William Elbers was present and made no objection to the classification. It is also averred Otto Meinheit, Sr., was present and did not object to the classification. That meeting was held April 10, 1912, and the plea avers that since that time the commissioners have expended considerable money in repairing and cleaning out the ditch of the district in anticipation of taxes to be collected from relators' lands, and that by reason of the delay of relators in bringing their action the commissioners have expended money and incurred liabilities which might have been avoided if relators had acted in apt time. There is no averment that the relators' lands have ever been assessed or that the relators have by any affirmative act or conduct influenced the action of the commissioners. The commissioners had no authority to expend money or incur indebtedness prior to the levy of an assessment. *Vandalia Drainage District* v. *Hutchins,* 234 Ill. 31; *Drainage Comrs.* v. *Kinney,* 233 id. 67.

The drainage district used for its main ditch Butterfield creek, which was a shallow stream but which the com-

missioners enlarged, deepened and also shortened by not following altogether the bends in the creek. That creek ran through land owned by a man whom we shall call Mallen, although he is variously called by two other names. The fathers of relators, Elbers and Meinheit, owned lands lying higher and further back from the creek than Mallen's land. Prior to the organization of the drainage district, Mallen, Meinheit, Sr., and Elbers, Sr., by mutual agreement constructed a tile drain from their respective lands, which emptied into Butterfield creek on the land of Mallen. The creek being shallow,—not more than two feet deep,—the tile outlet was laid in a box about a foot below the bed of the creek. When the district was organized Mallen's land was included in the district but the Elbers and Meinheit lands were not. At the place where the tile of relators and Mallen emptied into Butterfield creek the stream ran with a curve several rods out into Mallen's land. When the ditch was constructed by the commissioners they cut it straight through at that point, which left the mouth of the tile in the old bed of the stream, about ten rods from the ditch. In 1908 Mallen continued the tile from the old bed of the creek through to the district ditch for an outlet. The waters that drained into the ditch through that tile came from the lands of relators and Mallen. The commissioners decided that was a voluntary connection by the owners of the Elbers and Meinheit lands with the district ditch and accordingly in 1912 annexed the lands to and made them a part of the district. The drainage commissioners claimed that while the work of connecting the tile with the district ditch was done by Mallen, whose land was in the district, it was done with the agreement, direction and promise of assistance in paying the expense by the other two land owners. At the time the tile was extended into the district ditch and at the time the order of annexation was made the lands in controversy were owned by Otto Meinheit, Sr., and Henry Elbers. Meinheit, Sr., has

since died and Otto Meinheit, Jr., has succeeded him in title, and relator William Elbers has succeeded to the title of Henry Elbers.

Mallen testified for respondents to the construction by him, Elbers, Meinheit and others, prior to the organization of the district, of the tile drain which emptied into Butterfield creek on his land, about the existence of which there is no dispute. He testified that in 1908 he called a meeting of the parties interested to discuss extending the tile drain and changing the outlet from the creek to the drainage ditch; that Meinheit, Sr., was at the meeting and said he would not haul the tile but that witness could put them in, meaning the tile necessary to change the outlet from the creek to the drainage ditch; that he later saw Meinheit, who asked witness if he had put the tile in, and witness told him yes but that he had not finished the work, and that Meinheit replied, "All right; I will make it all right with you." The witness testified that at the meeting those in attendance did not give him much encouragement in the work proposed and none promised to help with the work or help pay the costs, but that one Meyers, who was at the meeting and whose land was drained by the tile, did haul some tile, and that the purpose of the meeting was to get those present to help pay the cost of changing the outlet. Henry Meyers testified to being at the meeting called by Mallen but did not remember what was done or said there.

For relators, Henry Greenhagen testified he was at the meeting called by Mallen at the home of Otto Meinheit, Sr., in 1908, at which Mallen wanted to change the outlet of the tile drain. He did not remember all that was said and done, but testified Otto Meinheit, Sr., did not want to help put in the new tile required to change the outlet. Edward Meinheit testified he was a son of Otto Meinheit, Sr., and attended the meeting at his father's house in 1908, and that his father opposed Mallen's plan or suggestion to run

the tile on into the drainage ditch and would not give his consent to it, and said he would not do any of the work or put a cent into it. H. P. Meinheit, another son of Otto Meinheit, Sr., testified he was present at the meeting in 1908 and that both his father and Greenhagen were not in favor of changing the outlet, and that his father wanted it left in the creek. The witness testified Greenhagen did help Mallen put it in. On re-direct examination this witness testified he did not hear his father say to Mallen that he would not help with the work, and that his father did help Mallen with the work. Henry Elbers testified he did not attend the meeting at Meinheit's but that he about that time talked with Mallen and told him he would not do anything about extending the drain.

The proof on the part of relators tended to show that the owners of their lands were satisfied with the outlet of the tile before the drainage district was organized and afterwards, and that Mallen, on whose land was the outlet, was the only person dissatisfied, and we think the jury were warranted in the conclusion, from the testimony, that Mallen alone was responsible for extending the tile eight or ten rods into the district ditch, and his action in so doing would not give the commissioners the right to annex relators' lands on the ground that they had voluntarily connected their drain with the district ditch and had thereby applied to become a part of the district. *People* v. *Barber,* 265 Ill. 316; *Inlet Swamp Drainage District* v. *Gleim,* 272 id. 551; *People* v. *Drainage Comrs.* 282 id. 514.

There was no prejudicial error in the rulings of the court in giving instructions.

The judgment is affirmed.          *Judgment affirmed.*